Smith v. Burns Drilling Co. 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-245-CV

     RONALD D. SMITH D/B/A OUIDA OIL, ET AL.,
                                                                                              Appellants
     v.

     L.D. BURNS DRILLING COMPANY, ET AL.,
                                                                                              Appellees
 

From the 13th District Court
Navarro County, Texas
Trial Court # 691-89
                                                                                                    

O P I N I O N
                                                                                                    

      Ronald Smith, doing business as Ouida Oil, and twenty-five investors under a joint operating
agreement filed suit against L.D. Burns Drilling Company and L.D. Burns Drilling Company, Inc. 
Smith and the investors sought damages arising out of a gas well re-entry and sidetrack drilling
program being conducted by Burns under a daywork drilling contract. In their first cause of
action, Smith and the investors alleged that Travis Little, a Burns employee, dropped the
production casing down the hole and that his actions constituted negligence, gross negligence, a
breach of contract, and a breach of express and implied warranties. In their second cause of
action, Smith and the investors alleged that the rig and equipment provided by Burns was in poor
condition, causing significant cost overruns and delays that constituted a breach of contract and
a breach of express and implied warranties. Burns filed a cross-claim against Smith and the
investors for failure to pay for services rendered under the daywork contract.
      Burns moved for summary judgment on the ground that Smith's claims were barred by the
daywork contract, including a provision releasing liability for consequential damages. In
response, Smith argued that all damages sought were direct, rather than consequential, because
they naturally flowed from Little's acts. Smith also took issue with Burns' interpretation of the
release and indemnity provisions of the daywork contract. Furthermore, the investors argued that,
because they were not parties to the daywork contract, their rights were not affected by the release
and indemnity provisions. The investors also moved for summary judgment on the ground that,
because they were neither parties to the daywork contract nor joint venturers with Smith, they
were not personally liable to Burns for services rendered under the daywork contract. The court
granted both motions for summary judgment but severed out Burns' breach of contract claim
against Smith along with Smith's claim of offset on his breach of contract claim against Burns.


 
We construe the trial court's final judgment as severing out Smith's second cause of action and
Burns' cross-claim, leaving only Smith and the investors' first cause of action and the investors'
right to pursue the second cause of action as the subject of this appeal.
      Before addressing Smith and the investors' first point, we will discuss their second point and
Burns' cross-point because they both deal with the investors' relationship to Smith and their
potential rights and liabilities in this litigation. In point two Smith and the investors argue that
Burns' motion for summary judgment was improperly granted against the investors because they
were not bound by the daywork contract. By granting the investors' motion for summary
judgment on Burns' cross-claim, the court concluded that the investors were neither parties to the
daywork contract nor joint venturers with Smith. In a single cross-point Burns contends that the
investors' motion for summary judgment was improperly granted because they were joint
venturers as a matter of law.
      A joint venture must include these four elements: a community of interest in the venture; an
agreement to share profits; an agreement to share losses; and a mutual right of control or
management of the enterprise.


 The investors, by their Joint Operating Agreement, granted Ouida
Oil "direct control of all operations." Under the Subscription Agreement each investor agreed to
pay $14,200 for a three-percent working interest in the well. Furthermore, in the Private
Placement Memorandum, Smith agreed that, "if the costs of drilling and completing the test well
exceeds $355,000.00 [$14,200 x 25 investors], Smith will bear all such excess costs." Finally,
the Joint Operating Agreement expressly provided, "It is not the intention of the parties to create,
nor shall this agreement be construed as creating, a mining or other partnership or association, or
to render the parties liable as partners."
      Burns has not asserted in its motion for summary judgment, or in its response to the investors'
motion for summary judgment, that the investors became liable by actually exercising joint
participation, control, or operation of the well.


 We conclude that the unambiguous contracts and
the proof show no more than that the non-operators were investors, who had and exercised no
right to participate in the control or operation of the venture.


 Because the investors were not joint
venturers as a matter of law, the trial court properly granted their motion for summary judgment
on Burns' breach of contract claim against them. Accordingly, we overrule Burns' cross-point.
      For the same reason—the investors' lack of privity with Burns—Smith and the investors'
second point of error should be overruled. Burns owed no duty, whether contractual or in tort,
to the investors. Furthermore, under the Private Placement Memorandum, the investors agreed
to rely upon Smith, as the operator under the Joint Operating Agreement, to manage and control
all activities related to oil and gas development and production. The parties specifically agreed
that Smith would obtain drilling and completion services from a driller or well-completion
contractor. Furthermore, Smith was given the absolute discretion to plug and abandon a well that
he determined was not capable of production. Although the investors bore the risk of loss of their
entire investment, Smith expressly assumed the risks of all costs overruns. Because the investors'
rights as working-interest owners were made completely derivative of Smith's rights and
obligations as the operator, the investors cannot individually pursue claims arising out of Smith's
relationship with Burns. Therefore, we overrule point of error two.
      In point one Smith and the investors contend that the court erred in granting Burns' motion
for summary judgment. They argue that the summary judgment was improperly granted because
(1) at the time Little caused the damage to the well, Burns was not operating on a "day work
basis"; (2) a question of fact existed regarding whether Smith had "fair notice" of the indemnity
provisions; and (3) the damages sought were direct rather than consequential. Of the three issues
raised by point one, however, only the third was expressly presented to the trial court in Smith
and the investors' response to Burns' motion for summary judgment. Issues not expressly
presented to the trial court by written response shall not be considered on appeal as grounds for
reversal of a summary judgment.


 Therefore, under point one, we will only consider whether the
summary judgment was improperly granted because the damages sought were direct rather than
consequential.
      The daywork drilling contract, between Ouida Oil as Operator and L.D. Burns Drilling
Company as Contractor, contained the following relevant provisions:
Except for such obligations and liabilities specifically assumed by Contractor, Operator
shall be solely responsible and assumes liability for all consequences of operations by
both parties while on a daywork basis, including results and all other risks or liabilities
incurred in or incident to such operations.
 
. . . .
 
14.5 The Hole: In the event the hole should be lost or damaged, Operator shall be
solely responsible for such damage to or loss of the hole, including the casing therein.
 
. . . .
 
14.12 Consequential Damages: Neither party shall be liable to the other for
special, indirect or consequential damages resulting from or arising out of this Contract,
including, without limitation, loss of profit or business interruptions, however same may
be caused.
 
14.13 Indemnity Obligation: Except as otherwise expressly limited herein, it is the
intent of the parties hereto that all indemnity obligations and/or liabilities assumed by
such parties under terms of this Contract, including, without limitation, paragraphs 14.1
through 14.12 hereof, be without limit and without regard to the cause or causes thereof 
(including pre-existing conditions), the unseaworthiness of any vessel or vessels, strict
liability, or the negligence of any party or parties, whether such negligence be sole, joint
or concurrent, active or passive. . . .

(Emphasis added).
      Burns replies that Smith's release of liability for consequential damages was not the only
relevant provision of the daywork contract. When a trial court's order granting summary
judgment does not specify the grounds relied on for its ruling, the summary judgment will be
affirmed on appeal if any of the theories advanced are meritorious.


 In addition to asserting that
Smith assumed liability for all consequential damages, Burns' motion for summary judgment relied
upon section 14.5, pointing out that Smith "had sole responsibility for loss or damage to the hole." 
Because the summary judgment can be affirmed on the basis that Smith assumed liability for all
damage to or loss of the hole, we need not determine whether the damages sought were direct
rather than consequential. Furthermore, because Smith and the investors did not attack the
enforceability of section 14.5 in their response to Burns' motion for summary judgment, we need
not address the issues of fair notice, the express-negligence test, or section 127.003 of the Civil
Practices and Remedies Code.


 We overrule point of error one.
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed March 31, 1993
Publish